FISER v CITY OF ANN ARBOR

Docket No. 66951. Argued March 8, 1983 (Calendar No. 1).—Decided
    October 19, 1983. Rehearing denied 418 Mich 1201.

Ronald Fiser brought an action in the Washtenaw Circuit Court
    against the City of Ann Arbor, three Ann Arbor police officers,
    and the driver and owners of an automobile which struck the
    plaintiff's vehicle during a high-speed police chase, seeking
    damages for injuries sustained, claiming that the negligence of
    the officers proximately caused his injuries. The court, Edward
    D. Deake, J., granted the city's and the officers' motion for
    summary judgment on the ground that they were protected by
    governmental immunity. The Court of Appeals, D. F. Walsh
    and Beasley, JJ. (M. J. Kelly, P.J., dissenting), affirmed in an
    opinion per curiam (Docket No. 46426). The plaintiff appeals.

    In an opinion by Justice Kavanagh, joined by Chief Justice
    Williams and Justices Levin, Brickley, and Cavanagh, the
    Supreme Court *held:*

    Whether the city, through its agents, violated the standard of
    care due the plaintiff, whether there was an emergency suffi-
    cient under the circumstances to expose persons on the streets

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 118
    *et seq.,* 260 *et seq.*

    Liability of governmental unit or its officers for injury to innocent
        occupant of moving vehicle, or for damages to such vehicle, as
        result of police chase. 4 ALR4th 865.

    Liability of governmental unit or its officers for injury to innocent
        pedestrian or occupant of parked vehicle, or for damage to such
        vehicle, as result of police chase. 100 ALR3d 815.

[2] 61A Am Jur 2d, Pleading §§ 99 *et seq.,* 230 *et seq.*

[3, 4, 5, 10] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 208,
    244, 419, 836, 837.

[5] 57 Am Jur 2d, Negligence § 6 *et seq.*

[6, 9] 57 Am Jur 2d, Negligence §§ 136, 137.

[7] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 45 *et
    seq.*

[8] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 418, 419.

[10] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 835-837.

    57 Am Jur 2d, Negligence § 203.

to a high degree of risk resulting from a high-speed chase, and whether the actions of the officers proximately caused the plaintiff's injuries are questions for the jury.

1. The negligent operation of a government-owned vehicle by an officer of a governmental agency may render the agency and the officer liable in tort. To avoid liability for injuries resulting from a collision with a government-owned vehicle, it must be shown that the officer acted as a reasonably prudent man would have acted under the circumstances, or that the officer's negligence did not cause the injury, or that the injury was too insignificantly connected to or too remotely affected by the officer's negligence.

2. Drivers of authorized emergency vehicles, including police vehicles, may disregard traffic signals, speed limits, and directional movement indicators so long as life or property are not endangered, a warning is sounded and displayed, and an actual emergency exists. Whether an actual emergency exists or circumstances warrant the driver's belief that an emergency exists is a question of fact.

3. Whether the actions of an officer during a high-speed pursuit of a vehicle are reasonable depends upon the speed of the pursuit, the area of the pursuit, weather and road conditions, pedestrian and vehicular traffic, warnings used, and the reason for the pursuit. In this case, the pursuit of a driver who had run a flashing red light through residential and business areas at speeds of up to 110 miles per hour, ignoring traffic signals and proceeding the wrong way on a one-way street and being aware that the object of the pursuit had once lost control of his vehicle could enable a jury to reasonably conclude that the city, through its agents, violated the standard of care owed to the plaintiff.

4. The proximate cause of injuries and whether there was concurrent liability or a superseding cause is generally a question for the jury. On the facts of this case, reasonable men might conclude that the officers' pursuit was not too remote a cause of the plaintiff's injuries and that the negligence of the driver they were pursuing did not sever the causal connection.

5. The Legislature has determined the exemptions to the provisions of the Vehicle Code which apply to emergency vehicles and the liability of governmental agencies for the negligent operation of emergency vehicles as a matter of public policy. If the performance of police officers is chilled by the application of the policy, the Legislature undoubtedly was satisfied that a higher public good would be served. Even were

the Court persuaded that the policy is unwise, it would not be free to change it.

Justice Ryan, joined by Justices Brickley and Cavanagh, concurred in the judgment of the Court. It is immaterial whether a decision by police officers to pursue a fleeing vehicle and the actual pursuit were discretionary or ministerial acts because, where their behavior proximately caused bodily injury or property damage arising out of the negligent operation of a government-owned motor vehicle, there is no immunity for the city and therefore none for them. Proximate cause, in the first instance, is a question of law in the sense that it is for the court and not the jury to determine whether the facts alleged and not controverted, if proved, could establish liability in the party charged. The error of the trial court was not in treating the proximate cause issue as a question of law, but in concluding that the negligence attributed to the driver of the vehicle being pursued was a superseding cause which, combined with the fact that the vehicles operated by Officers Miller and Lunsford never struck the plaintiff's vehicle, precluded the plaintiff from offering proof that the actions of the officers proximately caused his injuries. Neither the statute excepting the city and by implication the officers from the protection of governmental immunity in operating motor vehicles nor the common law requires that the police vehicles actually contact or be directly involved in a collision with the plaintiff's vehicle to establish liability. Justice Ryan would hold as a matter of law that under the circumstances of the case the actions of Miller and Lunsford may have proximately caused or contributed to the plaintiff's injuries and that the determination whether those actions were the causes in fact of the injuries is for the trier of fact.

Affirmed in part and reversed in part.

107 Mich App 367; 309 NW2d 552 (1981), affirmed in part and reversed in part.

OPINION OF THE COURT

1. GOVERNMENTAL IMMUNITY — MOTOR VEHICLES — NEGLIGENCE.

The negligent operation of a government-owned motor vehicle by an officer of a government agency may render the agency and the officer liable in tort for resulting injuries (MCL 691.1405; MSA 3.996[105]).

2. NEGLIGENCE — SUMMARY JUDGMENT.

Summary judgment may be granted a defendant in an action for negligence where it is determined that all reasonable men

would agree that the defendant acted as a reasonably prudent man would have acted under the same or similar circumstances, or that no injury was suffered, or that the defendant's negligence did not cause the injury, or that the injury was too insignificantly connected to or too remotely affected by the defendant's negligence.

3. Automobiles — Emergency Vehicles — Traffic Regulations.

The driver of an emergency vehicle, when responding to a call which is reasonably believed to be an emergency, may, when sounding and displaying prescribed warnings, proceed past stop signals after slowing as required by safety, exceed speed limits so long as life or property are not endangered, and disregard regulations governing the direction of movement or turning of a vehicle (MCL 257.603; MSA 9.2303).

4. Automobiles — Emergency Vehicles — Traffic Regulations — Police Pursuit — Questions of Fact.

The existence of an emergency or circumstances warranting the reasonable belief that an emergency exists which will exempt the driver of an authorized emergency vehicle from observing traffic regulations is a question of fact; the chase or apprehension of violators of the law or persons suspected by police of violation is not necessarily an emergency (MCL 257.603; MSA 9.2303).

5. Automobiles — Emergency Vehicles — Traffic Regulations — Police Pursuit — Questions of Fact.

Emergency vehicles must be driven with due regard for the safety of others; the existence of an emergency is but one factor to be considered in evaluating the reasonableness of a driver's conduct; other factors to be considered are the speed of the pursuit, the area of pursuit, weather and road conditions, pedestrian and vehicular traffic, the presence or absence of audible and visual warnings, and the reason for the pursuit (MCL 257.632; MSA 9.2332).

6. Negligence — Proximate Cause — Questions of Fact.

The proximate cause of an injury and whether there was concurrent liability or a superseding cause is a question of fact.

Concurring Opinion by Ryan, J.

7. Governmental Immunity — Motor Vehicles — Discretionary Acts.

*Whether police officers' decision to pursue a fleeing vehicle with their police cars and the pursuit were discretionary or ministe-*

rial acts was immaterial in a case where the plaintiff's injuries were alleged to have resulted from the negligent operation of the police cars belonging to a city, because a statute excepts governmental agencies, and consequently their employees, from immunity where the injuries result from negligent operation of a motor vehicle owned by a governmental agency (MCL 691.1405; MSA 3.996[105]).

8. AUTOMOBILES — EMERGENCY VEHICLES — CARELESS OPERATION.

The statute concerning the operation of emergency motor vehicles does not insulate the owner or driver from liability for careless operation of an emergency vehicle because it requires that emergency vehicles be operated in such a way as not to endanger life or property (MCL 257.603; MSA 9.2303).

9. NEGLIGENCE — PROXIMATE CAUSE — QUESTION OF LAW — PLEADING — SUMMARY JUDGMENT.

Proximate cause in a negligence case, in the first instance, is a question of law in the sense that it is for the court, on a motion for summary judgment, and not the jury to determine whether the facts alleged and not controverted, if proved, could establish liability in the party charged (GCR 1963, 117.2).

10. AUTOMOBILES — EMERGENCY VEHICLES — POLICE PURSUIT — NEGLIGENCE — QUESTIONS OF FACT.

Negligence of a driver of a car which collided with the plaintiff's car while fleeing from pursuing police cars, combined with the fact that the police cars never contacted nor were directly involved in the collision with the plaintiff's car, was not necessarily a superseding intervening cause of the collision which would preclude the plaintiff from offering proof that the actions of the police officers were a proximate cause of his injuries if the officers should have realized that the fleeing driver might act as he did, or if a reasonable man knowing the situation would not regard the action of the fleeing driver as highly extraordinary, or if the intervening act of the fleeing driver was a normal consequence of the officers' acts and it was not extraordinarily negligent, the determination of the cause in fact of the injuries being for the trier of fact in such a case.

*Erwin A. Salisbury* for the plaintiff.

*R. Bruce Laidlaw,* City Attorney, and *John K. Van Loon,* Chief Assistant City Attorney, for the City of Ann Arbor and the police officers.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George H. Weller,* Assistant Attorney General, for the Attorney General.

*Garlington & Sluiter* (by *Jack R. Sluiter)* for the City of Wyoming.

*Burton R. Shifman* for Michigan Association of Municipal Attorneys.

*Kathleen L. Bogas* and *Barry P. Waldman* for Michigan Trial Lawyers Association.

KAVANAGH, J. In this case we are asked to consider the liability of police officers and their municipal employer for conduct involved in the high-speed pursuit of a traffic violator which resulted in severe injuries to the plaintiff.

Plaintiff, Ronald Fiser, appeals the entry of summary judgment for defendants City of Ann Arbor and Ann Arbor police officers David L. Miller, Donald Terry, and Walter Lunsford. Plaintiff seeks damages for injuries sustained in an automobile collision involving his car and a car driven by Michael Lehman, which was being chased by an Ann Arbor police car driven by defendant Lunsford at the time of the accident. Plaintiff alleges that his injuries were caused in part by the negligence of the police officers.

In the early morning hours of October 19, 1975, plaintiff was driving his automobile south on South Main Street in Ann Arbor. At the same time, an automobile driven by Michael Lehman was proceeding east on Madison Street toward the intersection of Madison and South Main. Lehman

was being pursued by a fully marked Ann Arbor police car with activated emergency sirens and overhead oscillating lights. Traveling at a high speed, Lehman disregarded the flashing red light at the intersection, entered the intersection without stopping, and struck plaintiff's car. Plaintiff was severely injured.

Lehman's collision with plaintiff's vehicle terminated an automobile chase in which all of the defendant police officers had been involved. Lehman was first observed by defendants Miller and Terry when he failed to stop for a flashing stop signal. The officers, on duty in a fully marked Ann Arbor police car, immediately signaled Lehman to stop. When Lehman ignored this signal, defendant Miller, the driver of the police car, activated the overhead emergency lights and began to pursue Lehman. A high-speed chase ensued through residential and business areas with the vehicles reaching speeds of 110 miles per hour and the drivers disregarding traffic signals. At some point in the pursuit, Lehman lost control of his vehicle, and, after being struck by the police car, Lehman's car came to a stop. As Officer Terry left the police car to approach Lehman, Lehman sped away again, nearly running down Officer Terry.

Officer Miller continued to pursue Lehman's vehicle alone. Miller followed Lehman the wrong way down a one-way street and shortly thereafter lost track of the Lehman car. About two minutes later, Sergeant Lunsford, who was also operating a fully marked Ann Arbor police car and who had received a radio report of the high-speed chase, the collision involving Officer Terry, and a description of the Lehman vehicle and its license number, spotted Lehman's car and began pursuit with his emergency lights and siren activated. Lunsford

pursued Lehman for approximately six blocks at a maximum speed of about 55 miles per hour in a 25 miles per hour zone. Approaching the intersection of Madison and South Main, Lunsford observed Lehman unsuccessfully attempt to brake before accelerating to get through the intersection. In accelerating, Lehman struck the vehicle driven by plaintiff broadside.

The trial court reviewed the affidavits of the police officers, the allegations of plaintiff's amended complaint, and testimony given by Sergeant Lunsford at the hearing on the defendants' motion for summary judgment, and granted the City of Ann Arbor and Officers Miller, Terry, and Lunsford summary judgment. In a split decision, the Court of Appeals affirmed the judgment of the circuit court. For the reasons stated below, we reverse the summary judgment rendered in favor of the City of Ann Arbor, Officer Miller, and Sergeant Lunsford.

The defendants argue that the City of Ann Arbor and the police officers involved are immune from any tort liability arising out of the accident. Defendants rely on MCL 691.1407; MSA 3.996(107):

> "Sec. 7. Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

However, the Legislature has provided an exception from governmental immunity for injuries resulting from the negligent operation of a govern-

ment-owned vehicle by an officer of a governmental agency, MCL 691.1405; MSA 3.996(105):

"Sec. 5. Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948."

Therefore, if the pursuit[1] of Michael Lehman constituted negligent operation of the police vehicles, defendants Miller, Lunsford, and the City of Ann Arbor are not immune from tort liability. We affirm the circuit court's grant of summary judgment in favor of Officer Terry because he did not operate either of the police vehicles involved in the pursuit.[2]

In a negligence action a judgment for the defendant can properly be made only upon a determination a) that the defendant did act as a reasonably prudent man would have acted under the same or similar circumstances, *i.e.,* that the defendant did not violate the standard of care owed to the plaintiff, b) that the plaintiff suffered no injury, c) that the defendant's negligence did not cause the plain-

---

[1] In the order of this Court granting leave to appeal, the parties were directed to include among the issues to be briefed whether the decision by police to pursue and to continue pursuit of a traffic violator was "discretionary" or "ministerial". We have since determined that the resolution of this issue is unnecessary in this case. Accordingly, we do not address it here.

[2] Judge Deake of the circuit court explained, "[t]his court is of the opinion that the Legislature did not intend, and thus the statute does not provide, that the mere operation of a police car radio should be deemed 'operation * * * of a motor vehicle' so as to subject Terry to the motor vehicles exception to the general rule of governmental immunity." The Michigan Vehicle Code defines "operator" as "every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway". MCL 257.36; MSA 9.1836.

tiff's injury, or d) that the injury of the plaintiff was too insignificantly connected to or too remotely affected by the defendant's negligence. For a proper grant of summary judgment for the defendant, a trial judge must rule that *all* reasonable men would agree on the conclusion of a), b), c), or d). *Davis v Thornton,* 384 Mich 138, 142; 180 NW2d 11 (1970).

In determining whether the trial court properly granted summary judgment for the defendants in this case, we must review the reasonableness of the officers' actions and the question whether these actions could have been a proximate cause of plaintiff's injuries, and decide whether all reasonable men would agree with the conclusions. Plaintiff's injuries are not in question.

In *McKay v Hargis,* 351 Mich 409, 418; 88 NW2d 456 (1958), the Court set out the standard by which to determine a claim of negligence on the part of a police officer. The officer's conduct should be compared to "that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances".

The defendants claim that the duty they owe to the public in regard to the operation of police vehicles is governed by specific legislation pertaining to authorized emergency vehicles.[3] MCL 257.603; MSA 9.2303 provides in part:

"(b) The driver of an authorized emergency vehicle when responding to an emergency call, but not while returning from an emergency call, may exercise the privileges set forth in this section, subject to the conditions of this section.

―――――――――――――

[3] MCL 257.2; MSA 9.1802 includes police vehicles within the meaning of "authorized emergency vehicles".

"(c) The driver of an authorized emergency vehicle may:

"(1) Park or stand, irrespective of the provisions of this act.

"(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

"(3) Exceed the prima facie speed limits *so long as he does not endanger life or property.*

"(4) Disregard regulations governing direction of movement or turning in specified direction.

"(d) The exemptions granted in this section to an authorized emergency vehicle shall apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary except as provided in subsection (e), and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light". (Emphasis added.)

MCL 257.632; MSA 9.2332 states:

"The speed limitation set forth in this chapter shall not apply to vehicles *when operated with due regard for safety* under the direction of the police when traveling in emergencies *or* in the chase or apprehension of violators of the law or of persons charged with or suspected of a violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances when traveling in emergencies * * *. *This exemption shall not however protect the driver of the vehicle from the consequences of a reckless disregard of the safety of others."* (Emphasis added.)

The defendants allege that Officer Miller and Sergeant Lunsford were operating their vehicles within the terms of the statutes, and that therefore they cannot be held to have been negligent.

In order for MCL 257.603; MSA 9.2303 to apply, defendants must show that the officers reasonably

believed an emergency existed. The chase or apprehension of violators of the law or persons suspected of a violation does not necessarily constitute an emergency situation.[4] "Whether or not there was an emergency (or circumstances warranting the driver's belief that there was) bringing into play the provisions of the applicable statutes * * * is a matter of fact." *Hoffmaster v McNett*, 2 Mich App 709, 711; 141 NW2d 352 (1966). The finder of fact must determine whether the circumstances of this case brought the emergency provisions of the statute into play.

Even if it be determined that the officers were excused by statute from obeying most of the rules of the road, the officers must not endanger life or property. The legislative intent is expressed in these statutes—emergency vehicles must be driven with due regard for the safety of others. *Kalamazoo v Priest*, 331 Mich 43, 46; 49 NW2d 52 (1951). Thus, the existence of an emergency is but one factor to be considered in evaluating the reasonableness of an officer's conduct.

Other factors to be considered in determining whether the pursuing officer's actions were reasonable include speed of pursuit, the area of pursuit, weather and road conditions, the presence of pedestrians and other traffic, the presence or absence of audible and visible warnings, and the reason the officers were pursuing the fleeing vehicle.

In the instant case, Officer Miller initiated the pursuit because he observed Lehman run a flashing red light. A high-speed chase ensued in resi-

---

[4] In *Lingo v Hoekstra*, 176 Ohio St 417, 420; 200 NE2d 325 (1964), the Ohio Supreme Court recognized the distinction the General Assembly had made between "response to an emergency call" and "the immediate pursuit of an actual [or] suspected violator of the law" and held that the officer's pursuit of a suspected violator to pace his speed did not as a matter of law constitute "responding to an emergency call". MCL 257.632; MSA 9.2332 makes such a distinction.

dential and business areas at speeds of up to 110 miles per hour, with the drivers ignoring traffic signals and proceeding the wrong way on a one-way street. The pavement was wet because it was raining. Shortly after Officer Miller lost sight of Lehman, Sergeant Lunsford took up the chase. Defendant Lunsford was aware that Lehman had failed to stop for Officers Miller and Terry when they chased him for several blocks at high speeds and that Lehman had already lost control of his vehicle once. Nonetheless, defendant Lunsford pursued Lehman through residential and business districts for six blocks at speeds of up to 30 miles per hour in excess of the posted limits. Lunsford admitted that he was concerned about the intersection of Madison and South Main, which at that time of morning is heavily traveled. It was at this intersection that the collision with plaintiff occurred.

After reviewing the evidence, we hold that a jury could reasonably have concluded that the City of Ann Arbor, through its agents, violated the standard of care owed to the plaintiff.

The circuit court and Court of Appeals also found no liability as a matter of law because the actions of defendants Miller and Lunsford were not a proximate cause of plaintiff's injuries. The courts based this determination on the fact that defendant Miller had lost sight of Lehman and was a mile away from the intersection of Madison and South Main when the collision with plaintiff occurred, and that defendant Lunsford's vehicle, which was chasing Lehman at the time of the accident, did not make physical contact with plaintiff's car. The courts also found that the negligent driving of Lehman was an intervening act causing the collision.

This Court discussed the issue of proximate cause at length in *Camp v Wilson,* 258 Mich 38, 41-42; 241 NW 844 (1932):

" 'If a man does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury.' *Tozer v Michigan Central R Co,* 195 Mich 662, 666; 162 NW 280 (1917).

" 'It is elementary that where injury results from the concurrent negligence of two or more, each proximately contributing to the result, recovery may be had against one or more, although but one satisfaction may be had.' *Banzhof v Roche,* 228 Mich 36, 41; 199 NW 607 (1924).

" 'There may be more than one proximate cause for the same injury, and the mere fact that some other cause cooperates with the negligence of the defendant to produce the injury for which suit is brought does not relieve him from liability.' 2 Blashfield, Cyclopedia of Automobile Law, p 1204."

With regard to the effect of an intervening act, 2 Restatement Torts, § 447, p 1196, explains:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted." Quoted with approval in *Davis, supra,*

384 Mich 149, and *Comstock v General Motors Corp,*
358 Mich 163, 179; 99 NW2d 627 (1959).

The question of proximate cause is generally
held to be one for the jury. *Comstock,* p 180. Any
doubts about the relations between the causes and
the effects should be resolved by the jury. The
determination of remoteness should seldom, if
ever, be summarily determined. *Davis,* pp 145, 147.

Plaintiff's contention in the present case is that
the reckless and negligent conduct of Lehman was
the result, in part, of the way in which he was
being pursued by the officers. Plaintiff alleges that
the defendants' pursuit of Lehman at high speeds
and without regard for traffic laws caused Lehman
to drive negligently and, in an effort to evade his
pursuers, to recklessly turn his car, causing a
collision with plaintiff's vehicle.

We agree that the excessive speed of the Leh-
man vehicle could be said to have resulted from
the fact that he was being pursued by the police
and that it was this high speed which caused him
to lose control of the car.

Under the facts of this case, we hold that rea-
sonable men might conclude that the pursuit by
defendants Miller and Lunsford was not too re-
mote a cause of plaintiff's injuries and that the
negligent conduct of Michael Lehman did not
sever that causal connection.

The defendants argue that a reversal of the
decision of the Court of Appeals would be contrary
to good public policy because it would have a
chilling effect on the performance of police officers.
Whatever the merits of defendants' argument, it is
not for us to decide. The Legislature has deter-
mined the public policy embraced in MCL 257.603,
257.632, 691.1405; MSA 9.2303, 9.2332, 3.996(105),

and, if the performance of police officers is chilled thereby, undoubtedly the Legislature was satisfied that a higher public good was served by enacting the statutes. Even if we were persuaded that the policy is unwise, we would not be free to change it.

Plaintiff's claims of negligence and proximate causation of his injuries on the part of defendants City of Ann Arbor, Officer Miller, and Sergeant Lunsford are properly questions of fact for the jury.[5]

Affirmed in part, reversed in part, and remanded. Plaintiff may tax costs.


Williams, C.J., and Levin, Brickley, and Cavanagh, JJ., concurred with Kavanagh, J.


Ryan, J. I concur in the Court's judgment that the Court of Appeals erred in concluding that the defendants City of Ann Arbor and Officers Miller and Lunsford were entitled, as a matter of law, to a judgment dismissing the plaintiff's complaint against them.

The statute which excepts "governmental agencies" from the immunity otherwise extant precludes the necessity of considering whether the individual defendants' decision to pursue the fleeing vehicle and the actual pursuit of the fleeing

---

[5] Cases holding that in similar situations negligence or recklessness and proximate causation are questions for the jury include *Kuzmics v Santiago,* 256 Pa Super 35; 389 A2d 587 (1978), *Mason v Bitton,* 85 Wash 2d 321; 534 P2d 1360 (1975), *Schatz v Cutler,* 395 F Supp 271 (D Vt, 1975), and *Myers v Town of Harrison,* 438 F2d 293 (CA 2, 1971), *cert den* 404 US 828 (1971).

There is authority to the contrary. For a collection of cases concerning the liability of a governmental unit or its officers for injuries resulting from police chases, see 4 ALR4th 865; 83 ALR2d 452.

vehicle were discretionary or ministerial acts. If the police officers' behavior proximately caused "bodily injury [or] property damage resulting from the negligent operation * * * of a motor vehicle of which the governmental agency is owner",[1] it is immaterial whether the decision to pursue and the actual pursuit were discretionary or ministerial acts because if the city has no immunity defense, neither do the police officers. See *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979).

I agree with my brother that the provisions of MCL 257.603; MSA 9.2303, concerning the operation of emergency motor vehicles, does not insulate any of the defendants from liability for the careless operation of the police cars because that statute requires that emergency vehicles be operated in such a way as "not [to] endanger life or property". The well-pleaded facts of the plaintiff's complaint establish a jury-submissible question whether Officers Miller and Lunsford operated their police vehicles in a manner which endangered life or property and without due regard for the safety of the plaintiff.

The trial court in this case was of the view that, as a matter of law, the negligent acts, if any, of Officers Miller, Terry, and Lunsford were not proximate causes of the plaintiff's injury. In that connection, my brother declares:

"The question of proximate cause is generally held to be one for the jury. [*Comstock v General Motors Corp,* 358 Mich 163, 180; 99 NW2d 627 (1959).] Any doubts about the relations between the causes and effects should be resolved by the jury. The determination of remoteness should seldom, if ever, be summarily determined. [*Davis v Thornton,* 384 Mich 138, 145, 147; 180 NW2d 11 (1970).]"

---

[1] MCL 691.1405; MSA 3.996(105).

While my colleague's statement is correct as a generalized observation, in the context of this case it says too much.

Proximate cause, in the first instance, is a question of law in the sense that it is for the court and not the jury to determine, especially upon a motion for summary judgment, whether the facts alleged (GCR 1963, 117.2[1]) and not controverted (GCR 1963, 117.2[3]), if proved, could establish liability in the party charged. In *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), Justice LEVIN, writing for the Court, stated:

"The question of proximate cause, like the question of duty, is 'essentially a problem of law'." *Id.,* 440, citing Prosser, Torts (4th ed), § 42, p 244.

"While the court decides questions of duty, general standard of care and proximate cause, the jury decides whether there is cause in fact and the specific standard of care: whether defendants' conduct in the particular case is below the general standard of care, including— unless the court is of the opinion that all reasonable persons would agree or there is an overriding legislatively or judicially declared public policy—whether in the particular case the risk of harm created by the defendants' conduct is or is not reasonable." *Id.,* 438.

While it is true, therefore, that proximate cause is generally conceptualized as a factual determination for the jury, whether the behavior with which an actor is charged, if proved, would in law establish liability in the actor is a question for the court.[2] It is my view, therefore, that the trial court's error was not in treating the proximate cause issue as a question of law, but in concluding

[2] My colleague apparently agrees, since he appears to conclude, although he does not say, that, as a matter of law, Officer Terry's acts were not a proximate cause of the plaintiff's injuries "because [Terry] did not operate either of the vehicles involved in the pursuit".

that the negligence attributed to the third party, Lehman, was a superseding intervening cause which, combined with the fact that the vehicles operated by Officers Miller and Lunsford never made contact with the plaintiff's vehicle, precluded the plaintiff, as a matter of law, from proving that the actions of the defendants proximately caused, that is, were the cause in fact, of the plaintiff's injuries. Neither the statute which excepts the City of Ann Arbor, and consequently the individual defendant officers, from the protection of the immunity statute for motor vehicle-related negligence, nor the common law, requires that to establish liability it must be shown that the police cars made actual contact with the plaintiff's vehicle or were directly involved in the collision.

I would hold as a matter of law that in this case, on the facts alleged, the high-speed pursuit of the Lehman vehicle by the police vehicles, in the densely populated residential and commercial area of downtown Ann Arbor, may have proximately caused or proximately contributed to the injuries allegedly suffered by the plaintiff whose vehicle was struck by the vehicle being pursued. It is for the factfinder to determine whether the actions of the operators of the pursuing vehicles were causes in fact of the plaintiff's injuries. The reason the actions of the pursuing police officers may be proximate causes, and surely cannot be said as a matter of law *not* to be proximate causes, is:

"The fact that an intervening act of a third person [Lehman] is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's [Officers Miller and Lunsford] negligent conduct is a substantial factor in bringing about, if

"(a) the actor [Miller or Lunsford] at the time of his

negligent conduct should have realized that a third person [Lehman] might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person [Lehman] was done would not regard it as highly extraordinary that the third person [Lehman] had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's [Miller or Lunsford] conduct and the manner in which it is done is not extraordinarily negligent." 2 Restatement Torts, 2d, § 447, p 478.

I agree that, as a matter of law, Officer Terry's conduct cannot, on the facts alleged and as developed in the pretrial exhibits, affidavits, and testimony, result in liability for the plaintiff's injuries because Terry was not an "operator" of either of the emergency vehicles within the meaning of MCL 257.36; MSA 9.1836, and because, as a matter of law, his role in operating the radio communications equipment was too remote from the injury-causing events to amount in law to a proximate cause of the plaintiff's injuries.

Because the plaintiff has pleaded facts sufficient to state an actionable claim, including facts in avoidance of immunity, and because there exists a genuine issue concerning the material facts whether the actions of Officers Miller and Lunsford were negligent and, if negligent, proximately caused the plaintiff's injuries, I concur in the reversal of the judgment of the Court of Appeals as to those defendants and the City of Ann Arbor, and join in the judgment remanding this case for trial.

BRICKLEY and CAVANAGH, JJ., concurred with RYAN, J.

BOYLE, J., took no part in the decision of this case.