# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL GERARDI, Personal Representative
for the Estate of KARL GERARDI,

Plaintiff-Appellant,

v

SARA WALTERS, COUNTY OF LIVINGSTON,
and LIVINGSTON COUNTY AMBULANCE
EMS,

Defendants-Appellees.

UNPUBLISHED
January 15, 2015

No. 318233
Livingston Circuit Court
LC No. 12-026948-NI

Before: SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

This case arises from a collision between an ambulance owned by Livingston County and driven by Sara Walters, and an automobile driven by Karl Gerardi, now deceased. Because defendant Livingston County owned the ambulance, the Governmental Tort Liability Act (GTLA), MCL 691.1410 *et seq.*, governs defendants' liability. The circuit court granted defendants' motion for summary disposition on tort rather than immunity grounds, ruling that Walters was not negligent as a matter of law. The court premised its ruling on MCL 257.632, which under certain circumstances exempts ambulances from adherence to speed limits.

The speed limit exemption afforded by MCL 257.632 applies to ambulances operated "with due regard for safety[.]" Because questions of fact exist regarding whether Walters piloted the ambulance with due regard for Gerardi's safety, we reverse and remand for further proceedings.

## I. UNDERLYING FACTS AND PROCEEDINGS

Lawrence Mullaney presented to the St. Joseph Mercy Hospital Livingston County emergency room with symptoms of an acute stroke. An emergency room physician recommended that Mullaney receive t-PA, a clot-busting drug, and Mullaney agreed. The physician then decided that Mullaney would be transferred by ambulance to St. Joseph Mercy Hospital in Pontiac. On an "emergency transfer record," the physician certified that Mullaney's "emergency medical condition has been stabilized such that within reasonable medical probability, no material deterioration of the patient's condition is likely to result or occur during transfer." A hospital representative called defendant Livingston County Ambulance EMS and

-1-

requested an ambulance for the transfer. When asked for the "priority" of the transfer, the hospital representative replied, "Priority one."

An ambulance driven by defendant Walters responded. Walters and her partner, Dan Williams, situated Mullaney in the ambulance and proceeded toward Pontiac. Their route led them to eastbound M-59, also known as Highland Road. There are two travel lanes on M-59, one for eastbound traffic and one for westbound, as well as a center left-turn lane. The posted speed limit is 55 miles an hour.

Walters elected to drive the ambulance above the speed limit, at approximately 70 miles an hour. She activated the ambulance's emergency flashing lights and siren. As the ambulance approached the intersection of M-59 and Eager Road, Walters silenced the siren. At her deposition, Walters volunteered that she sometimes deactivates the siren to assist her partner's ability to hear the patient's lung sounds or to decrease the level of a patient's anxiety. She did not recall why she discontinued the siren on the day of the accident, as her partner had not communicated any difficulties related to the siren's sound.

According to Walters, westbound traffic on M-59 encounters "a little hill" before coming upon the intersection with Eager Road. Walters recalled that she had deactivated her siren before the Eager Road intersection came into her view. As she crested the little hill, Walters spotted Gerardi's vehicle facing north and resting at a stop sign at Eager Road's intersection with M-59.

Another vehicle traveling on Eager Road, driven by Joseph Kohler, had stopped behind Gerardi. Kohler testified at his deposition that from his vantage point behind Gerardi's car, he was able to see the ambulance approaching Eager Road from his left (the west). He noted that Gerardi had activated his left-turn signal. Kohler observed that Gerardi's car rolled forward from the stop sign, stopped again, and then appeared to proceed slowly onto M-59. Walters, too, recalled seeing Gerardi moving toward M-59. All traffic traveling east- or westbound on M-59 had pulled to the shoulder. But the Gerardi vehicle continued to creep into the intersection.

As the ambulance sped toward Eager Road, the Gerardi vehicle continued forward. Walters steered the ambulance to the left, into the left turn lane. Part of the ambulance crossed the center line. The evasive maneuver was unsuccessful and the ambulance and the vehicle collided. Gerardi suffered a traumatic head injury and was not able to testify before his death.

Livingston County Sheriff Sergeant Chad Sell investigated the accident. He determined that a driver stopped at the stop sign on Eager Road would have been able to see eastbound approaching traffic for a distance of approximately 725 feet. Sell opined that the ambulance was 535 feet from impact when Gerardi's vehicle made its final move into the intersection. In Sell's view, Gerardi was responsible for the accident.

Both Gerardi's car and the ambulance contained computer diagnostic modules that provided additional information relevant to the crash. The Gerardi vehicle's module revealed that five seconds before impact, Gerardi was at a stand-still. One second before the accident, Gerardi was traveling 12 miles an hour. The ambulance data recorder reported that just before impact, the ambulance was moving at a rate of 70 miles an hour. Sell detected no evidence that Walters had applied the ambulance's brakes before the two vehicles collided.

Gerardi's complaint asserted negligence claims against Livingston County and gross negligence claims against Walters. The complaint averred that Walters negligently failed to stay on the right side of the highway, exceeded the speed limit without using her siren, operated the ambulance in a manner that prevented her from stopping within the assured clear distance ahead, failed to apply the brakes before the crash, and otherwise drove "carelessly and heedlessly," and "with willful and wanton disregard for the safety and rights of others[.]" Pursuant to MCL 691.1402, the complaint stated, defendant Livingston County was liable for Walter's negligent operation of a motor vehicle. The complaint further alleged that Walters' actions constituted gross negligence.

Following the close of discovery, defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(10), contending that the GTLA barred Gerardi's negligence claims because as a matter of law, Walters' operation of the ambulance was neither negligent nor grossly negligent. Defendants also challenged that Walters' acts constituted the proximate cause of Gerardi's injuries. In response, Gerardi submitted reports and testimony provided by two expert witnesses, excerpts from depositions, and policies and procedure manuals addressing the use of emergency vehicles.

Gerardi's first expert witness, Billy Rutherford, is a retired Army Colonel who developed curricula for training ambulance operators utilized by the United States Department of Transportation and others. In Rutherford's view, an "interfacility transfer of a patient from one hospital to another" does not require excessive speed. His report states:

> While the State Statutes may allow operators of emergency vehicles certain exceptions to the laws, it does not mean that the ambulance operator must exceed the speed limit. When any vehicle is traveling faster than the posted speed limit it increases the risks to the ambulance and the public. This was the transfer of a stable patient to another healthcare facility and should have been done with minimum risks.

At deposition, Rutherford asserted that "Priority 1 does not dictate that they go emergency lights and siren." Had Walters been traveling at 55 miles an hour, Rutherford expressed, the collision would not have occurred.[1] Rutherford summarized: "What I will tell you is that it's her responsibility to be aware of the situation, and she should be operating the vehicle, or ambulance, in such a way that she can respond to people's reaction. And she was not doing that."

Thomas Bereza, an accident reconstructionist and former Michigan State Police officer, testified that if Walters had remained in the eastbound lane of travel rather than moving into the center left turn lane and then crossing the median, the accident would have been avoided. He explained:

---

[1] Sergeant Sell's report seems to validate this opinion. Sell stated: "If the ambulance were traveling at the posted 55 miles per hour it was covering 80.85 feet per second. Based on this information and my time distance calculation it would appear that [Gerardi] would have been able to complete his turn prior to the ambulance entering the intersection."

She didn't slow up before the accident. If she's traveling in the lane of travel as she intended to go and stayed right there, she would have gone straight eastbound and Mr. Gerardi would have made the turn and gone right down the road. There would never have been an impact.

Bereza expressed that when Walters spotted Gerardi's vehicle at the Eager Road intersection, she should have anticipated the possibility that he would pull out in front of her, and should have turned to the right rather than the left to avoid him. He agreed with Rutherford's opinion that "it's really poor judgment to speed on" an unlimited access highway such as M-59.

Bereza also took issue with Sell's conclusions regarding the distance at which Gerardi could have seen the approaching ambulance. According to Bereza, at 750 feet, "the vision would be quite short as far as seeing and distinguishing whether or not that's an ambulance or not." At 500 feet, "you might have a vehicle coming into view."

Livingston County's policies and procedures governing "driving county vehicles emergency and non-emergency" address one of the issues raised by Rutherford and Bereza. The policy provides in relevant part:

D. CROSSING THE CENTER LINE OR USING THE LEFT TURN LANE

1. Crossing the centerline or using the left turn lane is to be avoided, but is permitted only when all normal lanes are stopped. Be sure that all on-coming vehicles are stopped, giving the right of way and watch for turning traffic. Proceed slowly enough to allow for stopping time to avoid vehicles turning left in front of you. EXTREME CAUTION should be used if crossing double yellow lines, avoid this if at all possible.

The policy further provides that Priority 1 transports require "utilizing lights and sirens." The policy does not address the speed at which an emergency vehicle under a "Priority 1" instruction must travel.

The circuit court concluded that the evidence presented no genuine issues of material fact, that Walters' compliance with MCL 257.632 entitled her to exceed the posted speed limit, and that "[n]o facts support an assertion of a reckless disregard for the safety of others." The personal representative of Gerardi's estate now appeals.

## II. STANDARD OF REVIEW AND IMMUNITY PRINCIPLES

"We review de novo a circuit court's summary disposition ruling." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). We also review de novo the circuit court's ruling on the availability of governmental immunity. *Norris v City of Lincoln Park Police Officers*, 292 Mich App 574, 578; 808 NW2d 578 (2011). A motion brought under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh*, 263 Mich App at 621. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary

-4-

evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

Pursuant to MCL 691.1407(1), "a governmental agency is generally immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." However, the Legislature carved out an exception to immunity for a governmental agency's negligent operation of a motor vehicle:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in [MCL 257.1 to MCL 257.923]. [MCL 691.1405.]

"This language is clear: it imposes liability for 'bodily injury' and 'property damage' resulting from a governmental employee's negligent operation of a government-owned motor vehicle." *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84; 746 NW2d 847 (2008).

Walters, as a government employee, is entitled to immunity unless her conduct amounted to "gross negligence that is the proximate cause of the injury or damage." MCL 691.1407(2)(c). Gross negligence is defined as, "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Id*. at 121. "Generally, once a standard of conduct is established, the reasonableness of an actor's conduct under the standard is a question for the factfinder, not the court." *Tallman v Markstrom*, 180 Mich App 141, 144; 446 NW2d 618 (1989). However, if the plaintiff fails to raise a question regarding gross negligence on which reasonable minds could differ, summary disposition must be granted. *Jackson Co v Saginaw*, 458 Mich 141, 146; 580 NW2d 870 (1998).

III. ANALYSIS

A. THE STATUTORY FRAMEWORK

A tangle of statutes within the Motor Vehicle Code, MCL 257.1 *et seq*., address the standard of care expected of Walters under the circumstances presented in this case.

MCL 257.603 applies "to the drivers of all vehicles owned or operated by . . . a county . . . or any other political subdivision of the state, subject to the specific exceptions set forth in this chapter with reference to authorized emergency vehicles." MCL 257.603(1). Subsection (3)(c) permits "[t]he driver of an authorized emergency vehicle" to "[e]xceed the prima facie speed limits so long as he or she does not endanger life or property." Subsection (4) imposes a limit on the statute's authorization to exceed the speed limit:

The exemptions granted in this section to an authorized emergency vehicle apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary . . . . and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet in a 360 degree arc . . . .

Under MCL 257.603(4), only those emergency vehicles sounding an audible siren *and* displaying an oscillating, flashing or rotating light may exceed the speed limit.

MCL 257.632 again addresses the "speed limitation" set forth in chapter 257. It states:

The speed limitation set forth in this chapter shall not apply to vehicles when operated with due regard for safety under the direction of the police when traveling in emergencies or in the chase or apprehension of violators of the law or of persons charged with or suspected of a violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances when traveling in emergencies. This exemption shall apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren or exhaust whistle as may be reasonably necessary or when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicles, unless the nature of the mission requires that a law enforcement officer travel without giving warning to suspected law violators. This exemption shall not however protect the driver of the vehicle from the consequences of a reckless disregard of the safety of others.

In contrast with MCL 257.603(4), this section provides that the speed limit exemption applies "only when the driver of the vehicle while in motion sounds an audible signal by bell, siren or exhaust whistle as may be reasonably necessary *or* when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating or rotating red or blue light. . . ." (Emphasis added.) Notably, however, the statute commences with the proviso that a driver's entitlement to exceed speed limitations depends on whether the vehicle is being "operated with due regard for safety[.]"

MCL 257.649 sets forth the "rules of the road" regarding the right of way. At a stop sign, a driver must "yield the right of way to a vehicle which has entered the intersection from another highway or which is approaching so closely on the highway as to constitute an immediate hazard during the time when the driver would be moving across or within the intersection." MCL 257.649(6). However, a driver "traveling at an unlawful speed shall forfeit the right of way." MCL 257.649(5).

Another statute, MCL 257.653, more specifically declares the right-of-way rules applicable to emergency vehicles:

(1) Upon the immediate approach of an authorized emergency vehicle equipped with not less than 1 lighted flashing, rotating, or oscillating lamp

exhibiting a red or blue light visible under normal atmospheric condition from a distance of 500 feet to the front of the vehicle *and* when the driver is giving audible signal by siren, exhaust whistle, or bell:

> (a) The driver of another vehicle shall yield the right of way and shall immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway, clear of an intersection, and shall stop and remain in that position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

> * * *

> (2) *This section does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of persons using the highway.* [Emphasis added.]

Each of these statutes bears relevance to the standard of care issues presented in this case.

## B. THE CASE LAW INTERPRETING THE STATUTES

The Motor Vehicle Code's speed and right-of-way rules afford drivers of emergency vehicles certain exemptions from liability for specific acts that otherwise constitute negligence: speeding or failing to yield the right of way. Forming the backdrop to these exemptions, however, is the precept that the statutory privileges do not relieve operators of emergency vehicles from the duty of exercising due care. In *City of Kalamazoo v Priest*, 331 Mich 43, 46; 49 NW2d 52 (1951), our Supreme Court explained that the statutes requiring emergency vehicles to give "suitable warning" of their presence do not operate as impenetrable shields to liability:

> Had such been the legislative intent in the enactment of the Michigan statute, which expressly requires the giving of an audible warning as a condition precedent to an emergency vehicle's acquiring the right-of-way, no purpose would have been served by the further express requirement of the statute that such vehicle be driven with due regard for the safety of others.

The duty of due care, the Court expounded, subsumes "[m]any duties[.]" *Id.* at 47. Among them are "the duties to maintain a reasonable and proper lookout, to see what is plainly there to be seen and give it due heed, and, before proceeding, from a suitable observation of conditions then and there existing, to form a reasonable belief that it is safe to proceed." *Id.* The Court emphasized that the statutes providing speed and right-of-way exemptions

> contain[] not the slightest suggestion of a legislative intent to excuse such drivers from the other duties above mentioned. Had the legislature so intended, it would have been easy to so provide in express terms. The very opposite intent is indicated by the singling out of speed limits and right-of-way regulations alone for exemption purposes, and by the requirement in the selfsame statute that such vehicles must be driven with due regard for the safety of others. [*Id.* at 48.]

The Supreme Court revisited *Priest* in the landmark case of *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979). In *Placek*, the Court adopted the comparative negligence doctrine, abolishing the total bar to recovery erected under the contributory negligence rubric in place since Michigan's statehood. More relevant here, *Placek* involved an ambulance-automobile crash described by the Court as presenting "a close question of the negligence of one or both . . . drivers[.]" *Id.* at 650. The Court prefaced its analysis by observing: "We do not sit as trier of fact as to whether either, neither or both of these drivers were negligent." *Id.*

In *Placek*, a police vehicle was traveling with lights and siren on an emergency run. As the driver of the police car approached an intersection, he slowed and then speeded up again, not having seen the plaintiff's car. A witness testified that the police car was exceeding the speed limit. The plaintiff was traveling with the right of way and within the speed limit, and did not see the police vehicle until it was too late to avoid a collision. *Id.* at 650-651. "Nothing at the intersection obstructed the view of either driver." *Id.* at 651. The *Placek* Court considered the plaintiff's and defendant's duties of care in light of three of the same statutory provisions that operate this case: MCL 257.649, MCL 257.653, and MCL 257.603.

As to MCL 257.649, the Court reaffirmed that a driver holding the right of way (such as the plaintiff in *Placek*) is not absolved "from the need to exercise due care." *Placek*, 405 Mich at 670. The Court buttressed this conclusion by citing MCL 257.653, which then specifically provided, in language substantially similar to today's version: "'This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.'" *Id.*, quoting MCL 257.653 as enacted by 1964 PA 7. "Further," the Court expounded, MCL 257.603 separately contemplates that emergency vehicle drivers bear a duty to drive with due care for the safety of others. *Placek*, 405 Mich at 670. Under these statutes, the Court summarized, "it is clear that defendant, like plaintiff, is not absolved of the duty to drive '. . . with due regard for the safety of others. . . .'" *Id.*, quoting *Priest*, 331 Mich at 43. "Neither plaintiff nor defendant, therefore, had an absolute right to proceed blindly," the Court instructed. *Placek*, 405 Mich at 670.

The Supreme Court next confronted the statutory duties of an emergency vehicle driver in *Fiser v Ann Arbor*, 417 Mich 461; 339 NW2d 413 (1983), overruled on other grounds by *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000). The Court began its analysis by quoting to the standard of care for police officer-drivers set forth in *McKay v Hargis*, 351 Mich 409, 418; 88 NW2d 456 (1958), articulating that an "officer's conduct should be compared to 'that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances.'" *Fiser*, 417 Mich at 470. The *Fiser* defendants asserted that two of statutes pertinent in the instant case, MCL 257.603 and MCL 257.632, governed their duties. *Id.* at 471. The Supreme Court explained that MCL 257.603(3) (exempting emergency vehicles from speed limits) applied only if the officers "reasonably believed an emergency existed" that triggered the statute's operation. *Id.* at 471-472. The Court continued: "The chase or apprehension of violators of the law or persons suspected of a violation does not necessarily constitute an emergency situation. . . . The finder of fact must determine whether the circumstances of this case brought the emergency provisions of the statute into play." *Id.* at 472.

Citing *Priest*, the Court elaborated that even were the officers "excused by statute from obeying most of the rules of the road, the officers must not endanger life or property. The

-8-

legislative intent is expressed in these statutes—emergency vehicles must be driven with due regard for the safety of others." *Id*. Other factors, too, bore relevance to the police officers' duty of care: the "speed of pursuit, the area of pursuit, weather and road conditions, the presence of pedestrians and other traffic, the presence or absence of audible and visible warnings, and the reason the officers were pursuing the fleeing vehicle." *Id*.

Despite that the Supreme Court in *Robinson* overruled *Fiser*'s proximate cause analysis, the Court did not retreat from *Fiser*'s standard of care pronouncements. *Fiser* and *Robinson* involved police chases rather than ambulance-automobile collisions. Nevertheless, the statutes exempting the police and other emergency vehicle operators from various rules of the road, the Court reiterated, apply only when an officer drives with due care under the facts presented. *Robinson*, 462 Mich at 451-452.

### C. THE CASE LAW AND STATUTES, APPLIED

Among the well-established principles governing summary disposition analysis, none are more pertinent than the axiom that when entertaining a summary disposition motion under subrule (C)(10), the court must view the evidence in the light most favoring the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations or weighing the evidence. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). Like *Placek*, this is a close case of negligence. An argument can be made that Sergeant Sell correctly attributed all fault for the crash to Gerardi. On the other hand, we may not discount the evidence Gerardi brought forth substantiating that Walters drove the ambulance at a negligently excessive speed under the circumstances and failed to react appropriately when she spotted Gerardi's vehicle. "As a general rule, it can not be doubted that the question of negligence is a question of fact and not of law." *Detroit & Milwaukee R Co v Van Steinburg*, 17 Mich 99, 118 (1868). We conclude that genuine issues of material fact exist regarding whether Walters drove the ambulance in a negligent manner. Contrary to the circuit court's ruling, that MCL 257.632 permitted Walters to exceed the speed limit does not end the inquiry into her driving choices and conduct.

Walters' standard of care as an emergency vehicle driver encompasses that "care which a reasonably prudent [person] would exercise in the discharge of official duties" of a similar nature, under similar circumstances. *McKay*, 351 Mich at 418 (quotation marks omitted). According to Gerardi's experts (whose qualifications were unchallenged), Walters was duty-bound to take into consideration possibly unpredictable conduct of other drivers necessitating evasive action. This standard, Bereza testified, required Walters to decelerate and veer right rather than left. Similarly, Gerardi's experts opined that under the circumstances, Walters should not have exceeded the speed limit even if privileged to do so, should not have discontinued her siren, and should have avoided entering the left-turn lane. Accordingly, whether the standards of due care for an ambulance driver necessitated a slower speed or different maneuvers are for a jury to explore.

The circuit court determined that Walters was free from negligence because she "did in fact comply with MCL 257.632 while conducting an inter-facility transfer of a priority one stable patient." Walter's compliance with the statute, however, did not absolve her from the duty to otherwise operate the vehicle in a reasonably safe fashion. The statutes supplying speed and

right-of-way exemptions do not authorize emergency vehicle drivers to disregard their overriding obligation, also identified with specificity by the Legislature, to drive with due regard for the safety of other drivers. And although MCL 257.632 relieves ambulance drivers from observing speed limitations when using either flashing lights or a siren, the statute does not excuse the failure to use a siren if due care requires it.

Construing and applying a statutory exemption applicable to emergency vehicles substantially similar to Michigan's, the Supreme Court of Wisconsin employed the following analogous reasoning:

> The right of way given to public service vehicles and their exemption from traffic regulations, however, do not relieve their operators from the duty of exercising due care to prevent injury to themselves and others lawfully upon the ways. Although it is generally recognized that firemen driving to a fire, when the safety of lives and property are at stake, are in many instances duty bound to proceed at a rate of speed greater than that which any ordinary driver could justify and cannot be required to stop for red lights or other traffic signals, they must include in the care they are bound to exercise reasonable precautions against the extraordinary dangers of the situation which duty compels them to create. They must keep in mind the speed at which their vehicle is traveling and the probable consequences of their disregard of traffic signals, and while they have a right to assume in the first instance that the operators of other vehicles will respect their right of way at an intersection, they are warned by a red light flashing against them that other vehicles on the intersecting way are invited to proceed by a green light and may do so. Even if the driver of the other vehicle through negligence disregards their right of way, they must still use due care to avoid a collision. The measure of their responsibility is due care under all the circumstances. [*Montalto v Fond Du Lac Co*, 272 Wis 552, 558-559; 76 NW2d 279 (1956) (quotation marks and citation omitted).]

The Wisconsin Supreme Court recently cited this language approvingly. *Legue v City of Racine*, 2014 WI 92, ¶ 70; 849 NW2d 837 (2014). We find it equally applicable to Michigan's statutory scheme governing emergency vehicles and the case law interpreting it.

We express no opinion with regard to whether Walters' conduct qualifies as gross negligence, as the circuit court never addressed that question. On remand, defendants may again seek summary disposition on that ground.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause