*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VANESSA FERRIOLE,

Plaintiff-Appellee,

UNPUBLISHED
July 28, 2022

v

No. 358794
Wayne Circuit Court
LC No. 19-013687-NI

CITY OF DETROIT, CITY OF DETROIT POLICE
DEPARTMENT, and CASEY SCHIMECK,

Defendants-Appellants.

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's order denying defendants' countermotion for summary disposition on the basis of governmental immunity. For the reasons set forth in this opinion, we reverse and remand for entry of an order granting summary disposition in defendants' favor.

## I. FACTUAL BACKGROUND

This action arises out of a motor vehicle accident involving plaintiff and a police cruiser driven by police officer Casey Schimeck. Schimeck and her partner, Maureen Fortsch, were dispatched to respond to a call about a child trapped inside a vehicle. Schimeck activated the cruiser's emergency siren and lights, and she began driving to the location. It was light outside. She was driving south on Alter Road and reached a speed of approximately 59 miles per hour. The speed limit on Alter was 35 miles per hour.

As Schimeck approached the intersection with Charlevoix, the traffic light was red. The dash camera video and Schimeck's deposition testimony indicate that she applied the brakes and slowed down as she approached the intersection. Schimeck testified that she was familiar with the intersection and that she looked to her left and right "to make sure there was no vehicles proceeding through the intersection." According to Schimeck, Charlevoix is a two-way street east of Alter and becomes a one-way street traveling west beginning on the west side of Alter. There was testimony that the two-way portion of Charlevoix is only two lanes, with only one lane for each

-1-

direction, although the parties disputed in the trial court whether a clearly marked solid double yellow line was actually present between these two lanes.

Both the dash camera video and Schimeck's testimony reflect that a building on the northeast corner partially blocked Schimeck's view of traffic traveling west on Charlevoix toward the intersection with Alter. However, Schimeck testified that she could see that "there was some traffic stopped" and that she did not see any vehicles moving. The video also clearly shows that there was a vehicle stopped on Charlevoix on the east side of the intersection and facing west. There were no other vehicles directly in front of this vehicle. The lights and siren of Schimeck's vehicle were on throughout this time as she drove south on Alter approaching Charlevoix. Although not entirely clear, the record evidence reflects that Schimeck's vehicle was traveling approximately 40 to 49 miles per hour as it entered the intersection. Schimeck testified as follows:

> *Q*. When you saw traffic stop for what would've been west -- traffic traveling westbound on Charlevoix, what did that mean to you?
>
> *A*. That they saw me with my lights and sirens coming through and that I could proceed.

At about the time Schimeck was approaching the intersection, two other drivers, Michele Sabella and Gordon Jagger were in the westbound lane on Charlevoix, stopped at the red light east of Alter. Sabella's vehicle was the first one stopped at the light, which the dash camera video shows was visible to Schimeck as she approached the intersection. Jagger's vehicle was behind the vehicle driven by Sabella. Sabella testified that she saw the police car's emergency lights flashing on her right while she was stopped at the light, so she remained stopped and did not proceed through the intersection when the light in front of her turned green. Sabella indicated that her windows were up and her radio was on, so she could not say with "100% assurance" whether she heard the police siren. Jagger testified that he had heard the police siren and had seen the police car with its lights activated driving south on Alter toward Charlevoix before he came to a stop behind Sabella's vehicle. Jagger explained that as a result, he understood that Sabella did not start driving forward when the light turned green because it was necessary to wait for the police vehicle to go through the intersection.

However, at some point after the light turned green, Sabella saw a dark sedan pass her on the left and enter the intersection. Jagger also saw the dark sedan pass him on the left, and he testified that the police vehicle collided with the passenger side of the dark sedan in the middle of the intersection. Plaintiff was driving the dark sedan. The crash was captured by the dash camera video and a building surveillance video from a position on Charlevoix that is east of Alter.

The dash camera video shows that plaintiff's vehicle emerged from behind Sabella's vehicle as Schimeck's police vehicle was entering the intersection, after which the front of the police vehicle hit the passenger side of plaintiff's vehicle. The building surveillance video shows that plaintiff's vehicle approached Jagger's stopped vehicle from behind and then, without stopping, veered to the left to pass both Jagger's and Sabella's vehicles. Both Jagger's and Sabella's vehicles remained stationary as plaintiff's car entered the intersection and collided with Schimeck's police car as previously described.

Plaintiff testified in her deposition:

> I did not drive left of center against traffic. I was in simply the left lane of the two lanes going across Alter. These two cars that were in front of me were, I assumed, parked in the parking lane or turning right as that's what they do when they're going to work. So I just went straight on my little lane and across the street into Charlevoix -- well, where I was heading was into Charlevoix on the other side of Alter to go to work.

> \* \* \*

> From my perspective, I entered the intersection, I had a green light, I was going about 30, the cops came through the red light without stopping and t-boned me. Simple.

> \* \* \*

> They hit my passenger side and they shoved my car into the collision shop across the street, kitty-corner.

Plaintiff also testified more specifically about the moment she entered the intersection:

> I looked to the left and then I entered the intersection, I looked to the right and that's when I saw the cop who then like a split second later hit me.

Plaintiff testified that she had not seen any emergency lights or heard any sirens as she was approaching the intersection. She also testified that her radio was on and that she had "no idea" whether the police car's siren was activated.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action against defendants, alleging that she suffered serious injuries as a result of Schimeck's negligence. Plaintiff alleged that the motor vehicle exception to governmental immunity applied, and that the city and police department could thus be held vicariously liable, because Schimeck negligently proceeded into the intersection unlawfully against a red light without slowing down and yielding the right of way to plaintiff.

Plaintiff moved for partial summary disposition under MCR 2.116(C)(10) with respect to Schimeck's breach of her duty of care and plaintiff's lack of comparative fault. Plaintiff argued that there was no genuine issue of material fact that Schimeck breached her duty of care by "speeding through a red light, where she could not observe crossing traffic, could not determine if it was safe to go through the red light, and did not use the utmost caution, and . . . thus crashed into Plaintiff, who was in the intersection already." Plaintiff additionally argued that there also was "no genuine issue of material fact that Plaintiff was not comparatively negligent, where there is no evidence she violated traffic laws, no evidence of her failing to use to use due care; and where Plaintiff, who had a green light, and by the reasonable exercise of the senses of sight and hearing, did not and could not have noticed or heard warning that Defendant would be speeding through a

red light." Plaintiff maintained that under these circumstances, she had no duty to yield to Schimeck's police vehicle.

Defendants responded and argued that summary disposition should be granted in favor of defendants. Defendants argued that plaintiff could not establish the motor vehicle exception to governmental immunity because there was no issue of material fact that Schimeck complied with the applicable standard of care while responding to an emergency call by engaging her flashing lights and siren and proceeding through the intersection with the necessary caution. Defendants also argued that plaintiff was negligent and more than 50% at fault for the accident because she failed to yield to an emergency vehicle with its flashing lights and siren activated and because plaintiff illegally passed two vehicles by crossing solid yellow lines and driving in the lane for oncoming traffic. Defendants' retained collision reconstruction expert opined that plaintiff's operation of her vehicle was the sole cause of the accident and that Schimeck's actions were reasonable under the circumstances.

At the summary disposition motion hearing, the trial court indicated that it was granting plaintiff's motion in part and denying it in part. The trial court stated that there were questions of fact regarding whether Schimeck breached her duty of care and whether plaintiff was comparatively negligent for failing to yield to an emergency vehicle. However, the trial court ruled that based on the video evidence, and despite contradicting witness testimony, there was no double yellow line visible between the westbound and eastbound lanes of traffic on Charlevoix. After a series of motions disputing the precise terms and scope of the trial court's ruling on the motions for summary disposition, the trial court eventually entered orders on October 4, 2021, stating that defendants' motion for summary disposition was denied and that plaintiff's motion for partial summary disposition was granted in part and denied in part. Specifically, with respect to plaintiff's motion, the trial court's order stated as follows:

> IT IS FURTHER ORDERED, that Plaintiff, is not comparatively at fault, or otherwise at fault for the crash by reason of illegally crossing a solid double yellow line because there was no solid double yellow line present.

> IT IS FURTHER ORDERED that Plaintiffs motion for partial summary disposition regarding Defendant's additional theories of comparative fault is denied for the reasons stated on the record.

> IT IS FURTHER ORDERED that Plaintiffs motion for partial summary disposition regarding Defendant's breach of duty to use due care under the circumstances is denied for the reasons stated on the record.

## II. STANDARD OF REVIEW

"The applicability of governmental immunity is a question of law that is . . . reviewed de novo." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012). We review de novo issues of statutory interpretation, enforcing clear and unambiguous language as written. *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014). This Court also reviews a trial court's summary disposition ruling de novo. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015).

Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." *Bragan v Symanzik*, 263 Mich App 324, 327-328; 687 NW2d 881 (2004) (quotation marks and citation omitted). This Court reviews a motion brought under MCR 2.116(C)(10) by considering "the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists." *Id*. at 327 (quotation marks and citation omitted; alteration in original). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds may differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. ANALYSIS

On appeal, defendants first argue that they were entitled to summary disposition in their favor based on governmental immunity because Schimeck did not breach the applicable standard of care and thus was not negligent in her operation of the police vehicle.

Under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., governmental agencies are immune from tort liability if they are "engaged in the exercise or discharge of a governmental function," unless an exception applies. MCL 691.1407(1). "A plaintiff who asserts a claim against a governmental agency must plead in avoidance of governmental immunity by stat[ing] a claim that fits within a statutory exception . . . ." *Thurman v City of Pontiac*, 295 Mich App 381, 384; 819 NW2d 90 (2012) (quotation marks and citation omitted; alteration and ellipsis in original). "[T]he immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed." *Id*. (quotation marks and citation omitted; alteration in original).

The issue in this case involves whether plaintiff's claim falls within the motor vehicle exception to governmental immunity in MCL 691.1405, which provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the *negligent operation* by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." (Emphasis added.) This statute "imposes liability for bodily injury and property damage resulting from a governmental employee's *negligent* operation of a government-owned motor vehicle." *Hannay*, 497 Mich at 62 (quotation marks and citation omitted; emphasis added).

Establishing negligence requires proof of "four elements: (1) duty, (2) breach of the duty, (3) causation, and (4) damages." *Seldon*, 297 Mich App at 433. "[A]n officer's physical handling of a motor vehicle during a police chase, can constitute 'negligent operation . . . of a motor vehicle' within the motor vehicle exception." *Robinson v City of Detroit*, 462 Mich 439, 445; 613 NW2d 307 (2000) (ellipsis in original; citation omitted). Similarly, "an officer's physical handling of a motor vehicle during the course of responding to an emergency call can also constitute negligent operation of a motor vehicle." *Newton v Michigan State Police*, 263 Mich App 251, 268; 688 NW2d 94 (2004), overruled in part on other grounds by *Watts v Nevils*, 477 Mich 856; 720 NW2d 755 (2006).

Defendants argue that Schimeck did not breach the applicable standard of care because she complied with relevant provisions of the Michigan Vehicle Code (MVC), MCL 257.1 *et seq*. Defendants concede that MCL 257.627(1) generally provides that "[a]n individual operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time."[1]  However, defendants maintain that Schimeck's actions fell within exceptions to this general rule that apply to emergency vehicles and that are also contained within the MVC.  Specifically, MCL 257.603 states in relevant part:

(2) The driver of an authorized emergency vehicle when responding to an emergency call, but not while returning from an emergency call, or when pursuing or apprehending a person who has violated or is violating the law or is charged with or suspected of violating the law may exercise the privileges set forth in this section, subject to the conditions of this section.

(3) The driver of an authorized emergency vehicle may do any of the following:

(a) Park or stand, irrespective of this act.

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

(c) Exceed the prima facie speed limits so long as he or she does not endanger life or property.

(d) Disregard regulations governing direction of movement or turning in a specified direction.

(4) The exemptions granted in this section to an authorized emergency vehicle apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary, except as provided in subsection (5), and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet in a 360 degree arc unless it is not advisable to equip a police vehicle operating as an authorized emergency vehicle with a flashing, oscillating or rotating light visible in a 360 degree arc.  In those cases, a police vehicle shall display a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet to the front of the vehicle.  Only police vehicles that are publicly owned shall be equipped with a flashing, oscillating, or rotating blue light that when

---

[1] The recent amendment to this statute did not involve any substantive changes to the quoted language.  See 2022 PA 52.

-6-

activated is visible under normal atmospheric conditions from a distance of 500 feet in a 360 degree arc.

(5) A police vehicle shall retain the exemptions granted in this section to an authorized emergency vehicle without sounding an audible signal if the police vehicle is engaged in an emergency run in which silence is required.

Additionally, MCL 257.632 provides:

The speed limitation set forth in this chapter shall not apply to vehicles when operated with due regard for safety under the direction of the police when traveling in emergencies or in the chase or apprehension of violators of the law or of persons charged with or suspected of a violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances when traveling in emergencies. This exemption shall apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren or exhaust whistle as may be reasonably necessary or when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicles, unless the nature of the mission requires that a law enforcement officer travel without giving warning to suspected law violators. This exemption shall not however protect the driver of the vehicle from the consequences of a reckless disregard of the safety of others.

Further, MCL 257.653 provides in relevant part:

(1) Upon the immediate approach of an authorized emergency vehicle equipped with not less than 1 lighted flashing, rotating, or oscillating lamp exhibiting a red or blue light visible under normal atmospheric condition from a distance of 500 feet to the front of the vehicle and when the driver is giving audible signal by siren, exhaust whistle, or bell:

(a) The driver of another vehicle shall yield the right of way and shall immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway, clear of an intersection, and shall stop and remain in that position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

\* \* \*

(2) This section does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of persons using the highway.

Our Supreme Court has explained that the statutory references in MCL 257.603, 257.632, and 257.653 "to endangering life and the safety of others demonstrates that the Legislature has placed a duty upon police officers toward innocent persons when they are giving chase." *Robinson*, 462 Mich at 452. The statutory language indicates that the same duties apply to police

officers when responding to an emergency call that does not involve pursuing a suspected violator of the law. See *id*; MCL 257.603, 257.632, and 257.653; *Newton*, 263 Mich App at 268.

This Court has further explained regarding the duty of emergency vehicle drivers:

> [T]he Legislature has expressed its intent that while drivers are excused from following the "rules of the road" under certain circumstances, they must do so in a reasonable manner that is mindful of the safety of others on the road. Indeed, it is within the common experience of any driver who has encountered an emergency vehicle on the road: while police cars, ambulances, and fire trucks operating with lights and sirens may proceed through a red light, they may do so only after slowing and ensuring that any cross-traffic has observed them and stopped. [*Flanagin v Kalkaska Co Rd Comm*, 319 Mich App 633, 638; 904 NW2d 427 (2017).]

It is undisputed in the instant case that Schimeck had a red light and that the light was green for plaintiff and the other westbound drivers on Charlevoix. Our Supreme Court has explained that in such a situation, "the driver traveling on a through street, as against an emergency vehicle, has a right to cross the intersection unless, by the reasonable exercise of the senses of sight and hearing, he or she should have noticed or heard warning to the contrary." *Placek v City of Sterling Hts*, 405 Mich 638, 671-672; 275 NW2d 511 (1979). Under these circumstances, neither driver has an "absolute right to proceed blindly" and both drivers have a duty of "due regard for the safety of others." *Id*. at 670 (quotation marks and citation omitted).

Plaintiff contends that Schimeck's duty of care was defined by the following provisions of the Detroit Police Department manual:

> 1. Members shall drive Department vehicles in a cautious manner at all times and shall obey all traffic laws and regulations. Only emergency situations justify the increased hazard of driving with the siren in use. The siren, oscillating or flashing roof lights and headlights, shall be used as warning devices. When using these warning devices on an emergency run, the driver shall have the vehicle under complete control at all times and shall consider the current weather conditions.

> 2. In emergencies, when it is necessary to proceed against traffic lights or stop signs, the driver shall sound the siren, have the oscillating or flashing roof lights in operation, use the headlights and proceed with utmost caution. After slowing down or stopping, if necessary, the driver shall carefully observe traffic conditions before proceeding. . . .

Nonetheless, these manual provisions are consistent with the standard of care described above by reference to the statutes and jurisprudence of this state.

We now turn to considering whether plaintiff sustained her burden of providing evidence to create a genuine issue of material fact on the question of Schimeck's negligence so as to bring this cause of action within the motor vehicle exception to governmental immunity and justify the trial court's decision to deny defendants' motion for summary disposition. See *Mack v City of Detroit*, 467 Mich 186, 201; 649 NW2d 47 (2002) (stating that a governmental agency is presumptively immune from suit under the GTLA unless one of the statutory exceptions applies

-8-

and that "it is the responsibility of the party seeking to impose liability on a governmental agency to demonstrate that its case falls within one of the exceptions"). Plaintiff argues in her appellate brief that she "presented substantial evidence establishing that Defendant Officer Schimeck breached her duty to use due care before proceeding through the red light by failing to carefully observe the traffic conditions before proceeding through the red light." Plaintiff further argues that Schimeck's belief that it was safe to enter the intersection was not reasonable.

In resolving this issue, we must keep in mind that the "added obligations of due care and not endangering life and property imposed on [a police officer] by the statute must be read in the light of the situation [s]he faced and the duty to the public which [s]he was called upon to perform." *McKay v Hargis*, 351 Mich 409, 417; 88 NW2d 456 (1958). When a police officer drives in a manner that violates the ordinary "rules of the road" but is allegedly excusable pursuant to the above discussed statutes applicable to police and other emergency vehicles, the question of the police officer's negligence is not resolved by simply referring to the officer's compliance, or lack thereof, with various statutes in the Michigan Vehicle Code; the question is more nuanced and involves consideration of whether the officer's conduct was negligent under all the circumstances.[2] See *id*. at 417-418. In such situations, the officer

> is not to be deemed negligent merely because [s]he fails to observe the requirements of the Motor Vehicle Act. [Her] conduct is to be examined and tested by another

---

[2] We recognize that the degree of the officer's compliance with various applicable statutes may inform this analysis. See *Fiser v City of Ann Arbor*, 417 Mich 461, 471-472; 339 NW2d 413 (1983), overruled on other grounds by *Robinson*, 462 Mich 439. We simply observe that merely demonstrating that an officer technically complied with or, conversely, committed a technical violation of a statute is not dispositive by itself. See *Fiser*, 417 Mich at 472; see also *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 721; 965 NW2d 690 (2020) ("Michigan law does not subscribe to the doctrine of negligence per se. When a plaintiff proves that an actor has violated the terms of a statute, that is not conclusive proof of negligence. Rather, Michigan law provides that when a statute imposes a legal duty, violation of that statute creates a rebuttable presumption of negligence, or stated another way, the violation is only prima facie evidence of negligence.") (quotation marks and citations omitted); *Flanagin*, 319 Mich App at 639 ("In sum, these statutes do not establish a sort of immunity from suit or an excuse to be negligent. Rather, they merely recognize that drivers who are operating a vehicle under the covered circumstances are not violating these particular provisions of the motor vehicle code. The statutes' applicability to a lawsuit arising out of a collision involving one of these vehicles is minimal. It might lead to the conclusion that a plaintiff could not successfully base an argument on negligence per se for a statutory violation (because there would be no violation), but it would not lead to the conclusion that the operator of the emergency or road work vehicle could not be considered negligent simply because the operator was permitted to ignore the ordinary rules of the road under the circumstances.").

standard. [She] is required to observe the care which a reasonably prudent [person] would exercise in the discharge of official duties of a like nature under like circumstances. [*Id*. at 418 (quotation marks and citation omitted).]

More than 20 years after *McKay*, our Supreme Court explained:

In *McKay v Hargis*, 351 Mich 409, 418; 88 NW2d 456 (1958), the Court set out the standard by which to determine a claim of negligence on the part of a police officer. The officer's conduct should be compared to "that care which a reasonably prudent [person] would exercise in the discharge of official duties of like nature under like circumstances." [*Fiser v City of Ann Arbor*, 417 Mich 461, 470; 339 NW2d 413 (1983), overruled on other grounds by *Robinson*, 462 Mich 439.]

With respect to a defendant's negligence,

judgment for the defendant . . . can properly be made only upon a determination a) that the defendant did act as a reasonably prudent [person] would have acted under the same or similar circumstances or b) that the plaintiff suffered no injury, or c) that the defendant's negligence did not cause the plaintiff's injury, or d) that the injury caused plaintiff was too insignificantly connected to or too remotely effected by the defendant's negligence.

For a proper grant of summary judgment for the defendant, a trial judge must rule that All reasonable [people] would agree on the conclusion of a), b), c) or d) above. [*Davis v Thornton*, 384 Mich 138, 142; 180 NW2d 11 (1970).][3]

The record in this case reflects that Schimeck was responding to a call regarding a child trapped in a vehicle and that she was driving over the posted speed limit on Alter with her siren and flashing lights activated.

Although plaintiff testified that she did not hear the siren and plaintiff cites testimony from Sabella and another witness indicating that they did not remember hearing the siren, that testimony is immaterial to our analysis because we must simply consider whether Schimeck "observe[d] the care which a reasonably prudent [person] would exercise in the discharge of official duties of a like nature under like circumstances," *McKay*, 351 Mich at 418 (quotation marks and citation omitted), and there is no evidence that Schimeck did not activate her siren and flashing lights. The record evidence only supports a conclusion that the police vehicle's siren and lights were operating. The dash camera video indicates that the siren and lights were active as Schimeck was driving on Alter until the crash. Jagger testified that he heard the siren, and Sabella testified that she saw the police car's flashing lights. The fact that plaintiff did not hear the siren while her radio was on, and that two other witnesses did not recall hearing a siren, does not provide any evidence that the siren was not actually on and thus does not establish any question of material fact.

---

[3] See also *Fiser*, 417 Mich at 469-470 (employing this standard from *Davis*).

The record also indicates that as Schimeck approached the intersection, the light was red and she slowed down before entering the intersection. Schimeck was familiar with the intersection, looked both ways for moving traffic, and did not see any moving traffic. Schimeck only saw traffic that was "stopped," leading her to conclude that "they saw me with my lights and sirens coming through and that I could proceed."

We conclude that no reasonable person could disagree that Schimeck acted with the care that a reasonably prudent person would have shown under similar circumstances in carrying out the official duties required of Schimeck as a police officer. *McKay*, 351 Mich at 417-418; *Davis*, 384 Mich at 142. Accordingly, there is no genuine question of material fact that Schimeck did not breach her duty to plaintiff. Plaintiff has failed to establish that the motor vehicle exception applies in this case, and the trial court therefore erred by not granting summary disposition to defendants on the grounds of governmental immunity. *Mack*, 467 Mich at 201. On remand, the trial court shall enter and order granting summary disposition in favor of defendants and dismissing this case. Based on our conclusion, defendant's remaining arguments regarding comparative fault and the existence of the double yellow line are moot and we need not address them. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant having prevailed may tax costs. MCR 7.219.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

-11-