# STATE OF MICHIGAN

# COURT OF APPEALS

MARK STIEVE and DENISE STIEVE,

      Plaintiffs-Appellees,

v

CITY OF DEARBORN, DEARBORN POLICE
DEPARTMENT and KYLE BOWEN, also known
as KYLE BOWMAN,

      Defendants-Appellants.

UNPUBLISHED
March 9, 2017

No. 329591
Wayne Circuit Court
LC No. 13-014500-NI

Before: GLEICHER, P.J., and MURRAY and FORT HOOD, JJ.

PER CURIAM.

Mark Stieve filed suit following a collision with a Dearborn police cruiser speeding through a residential area while responding to a radio call. Defendants sought summary disposition on governmental immunity grounds, but the circuit court found several factual questions precluding such relief. The record supports various disputes regarding key elements of Stieve's and the police officer's potential negligence, which demand resolution by a jury. We affirm.

## I. BACKGROUND

On a clear, sunny afternoon in February 2013, a Dearborn police cruiser collided with a civilian-driven vehicle at the intersection of Outer Drive and Elmdale. Officer Kyle Bowen drove the cruiser, accompanied by his partner, Officer Jim Kostiuk. The officers were heading to assist a disabled vehicle whose young, female occupants reported that an armed man was "looking at" them.

As the officers travelled northwest along Outer Drive, they did not activate the vehicle's warning siren. The evidence conflicts regarding whether the officers employed the vehicle's flashing lights and if so when the lights were activated. The evidence establishes that Bowen travelled in the left lane of the median-divided residential street. Bowen claimed that he drove between 60 and 65 miles an hour in this 35-mph zone, but other evidence suggests he accelerated to 79 mph.

Mark Stieve drove his vehicle toward Outer Drive on the residential side street of Elmdale. Stieve's vehicle was equipped with a manual transmission and he asserted that he

-1-

came to a complete stop at the intersection's stop sign by placing the car in neutral and applying the brake. Stieve described that he looked both ways, perceived that his path was clear, and proceeded into the intersection. The officers, on the other hand, denied that Stieve came to a complete stop and asserted that he instead rolled through the intersection. The police cruiser's dash camera footage is inconclusive on this point. In any event, Bowen saw Stieve's vehicle a second or two before the collision. To lessen the impact, Bowen swung the cruiser slightly to the left.

Although no one appeared hurt at the scene, Stieve later claimed to have suffered head, neck, and spinal injuries. He filed suit against the city of Dearborn and the Dearborn Police Department, alleging negligent operation of a motor vehicle in violation of various traffic laws and against Officer Bowen, alleging gross negligence.[1]

Following discovery, defendants sought summary disposition under MCR 2.116(C)(7) (governmental immunity) and MCR 2.116(C)(10), claiming that Stieve failed to present a prima facie case of either negligence or gross negligence and that Stieve's own negligence was the cause of the accident. The circuit court denied the motion, finding that genuine issues of material fact precluded judgment as a matter of law.

## II. STANDARD OF REVIEW

We review de novo decisions on summary disposition motions. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). We also review de novo the applicability of governmental immunity. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012). "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). Further, we must consider "any affidavits, depositions, admissions, or other documentary evidence" submitted. *Id.* at 429. A court may grant summary disposition under (C)(7) if the moving party is entitled to "immunity granted by law." *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008).

> A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." [*Walsh*, 263 Mich App at 621.] "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which

---

[1] Stieve's wife filed suit in a derivative capacity.

reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).]

The Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.*, grants immunity from tort liability to governmental agencies "engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). No one disputes that the city and police department were engaged in a governmental function at the time of the accident. The immunity granted to governmental agencies is broad, while its exceptions are narrowly construed. *Thurman v City of Pontiac*, 295 Mich App 381, 384; 819 NW2d 90 (2012). Stieve argued that his claims against the city and department fell within the motor vehicle exception to governmental immunity, MCL 691.1405, which provides: "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in [MCL 257.1 to 257.923]." "This language is clear: it imposes liability for 'bodily injury' and 'property damage' resulting from a governmental employee's negligent operation of a government-owned motor vehicle." *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84; 746 NW2d 847 (2008).

MCL 691.1407(2) grants immunity to government officials as follows:

Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer [or] employee . . . while in the course of employment or service . . . if all of the following are met:

(a) The officer [or] employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's [or] employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

No one disputes that Officer Bowen is a government officer or employee who was acting within the scope of his employment at the time of the accident.

III. ANALYSIS

A. NEGLIGENT OPERATION OF A MOTOR VEHICLE

The city and police department contend that they were entitled to summary disposition because Stieve failed to create a question of fact that Bowen negligently operated a motor vehicle causing injury.

A police officer's physical handling of a motor vehicle even during the course of responding to an emergency call may constitute negligent operation of a motor vehicle. *Newton*

-3-

*v Michigan State Police*, 263 Mich App 251, 268; 688 NW2d 94 (2004), overruled in part on other grounds by *Watts v Nevils*, 477 Mich 856 (2006). Violation of a civil statute, ordinance, rule, or regulation can establish a prima facie case from which the jury may infer negligence. *Johnson v Bobbie's Party Store*, 189 Mich App 652, 661; 473 NW2d 796 (1991).

As recognized by the parties, several overlapping statutes within the Motor Vehicle Code (MVC), MCL 257.1 *et seq*., address the standard of care expected of Bowen while operating his police cruiser. MCL 257.627(1) generally provides that "[a] person driving a vehicle on a highway shall drive at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition then existing." Under MCL 257.603(3)(c), a police vehicle may exceed the speed limit "when responding to an emergency call" so long as life or property is not endangered. For the exemption in MCL 257.603(3)(c) to apply, the driver must employ "an audible signal by bell, siren, air horn, or exhaust whistle as might be reasonably necessary" unless he is "engaged in an emergency run in which silence is required" *and* has "activate[d] at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet." MCL 257.603(4)-(5).

MCL 257.632 provides a similar exemption for police vehicles that are "operated with due regard for safety" and are "traveling in emergencies or in the chase or apprehension of violators of the law or of persons charged with or suspected of a violation." Under this provision, the driver of a police vehicle is required to employ an audible signal *or* a flashing red and blue light visible from 500 feet, "unless the nature of the mission requires that a law enforcement officer travel without giving warning to suspected law violators." The statute also provides that the "exemption shall not . . . protect the driver of the vehicle from the consequences of a reckless disregard of the safety of others." Additionally, MCL 257.653 requires drivers to pull over upon the approach of an emergency vehicle when the emergency vehicle's lights and siren are activated, but does not relieve the driver of an emergency vehicle "from the duty to drive with due regard for the safety of persons using the highway."

These rules afford emergency vehicle drivers protection from liability for specific acts that would otherwise constitute negligence, such as speeding. The statutes do not relieve drivers from the duty of exercising due care. And they stress that visible and audible signals are of paramount importance. See *City of Kalamazoo v Priest*, 331 Mich 43, 46; 49 NW2d 52 (1951).

Our Supreme Court considered the statutory duties of an emergency vehicle driver in *Fiser v Ann Arbor*, 417 Mich 461; 339 NW2d 413 (1983), overruled on other grounds by *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000). The *Fiser* defendants asserted that MCL 257.603 and MCL 257.632 governed their duties. *Id*. at 471. However, the Supreme Court explained that the speed limit exemptions applied only if the officers "reasonably believed an emergency existed" that triggered the statutes' operation. *Id*. at 471-472. The Court reasoned that "[t]he chase or apprehension of violators of the law or persons suspected of a violation does not necessarily constitute an emergency situation . . . . The finder of fact must determine whether the circumstances of this case brought the emergency provisions of the statute into play." *Id*. at 472. The Court concluded that even were the officers "excused by statute from obeying most of the rules of the road, the officers must not endanger life or property. The legislative intent is expressed in these statutes—emergency vehicles must be driven with due

regard for the safety of others." *Id*. In other words, the statutes exempting the police and other emergency vehicle operators from various rules of the road apply only when an officer drives with due care under the facts presented. *Robinson*, 462 Mich at 451-452. The Supreme Court later overruled *Fiser*'s proximate cause analysis, *Robinson* 462 Mich at 445, but affirmed *Fiser*'s conclusions regarding the standard of care required of an officer responding to an emergency.

Here, Bowen clearly owed a duty to innocent bystanders and other persons using the highways. In determining whether Bowen breached that duty, his "conduct should be compared to 'that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances.' " *Fiser*, 417 Mich at 470, quoting *McKay v Hargis*, 351 Mich 409, 418; 88 NW2d 456 (1958). The *Fiser* Court listed a number of factors relevant to whether an officer in these circumstances met his duty of due care, including the officer's speed, the area of the pursuit, weather and road conditions, the presence of pedestrians or other traffic, the presence or absence of audible and visible warnings, and the nature of the emergency. *Fiser*, 417 Mich at 472.

As a general rule, the reasonableness of a defendant's conduct is a question of fact for the jury. *Id.* at 470. The factual disputes remaining in this case trigger no exception to that precept. Most importantly, a significant dispute exists regarding whether Bowen activated the cruiser's flashing red and blue lights. While Bowen and Kostiuk both testified in their depositions that the cruiser's emergency lights were activated for the entirety of their passage down Outer Drive, Stieve told investigating officers at the scene and later stated in an affidavit that he had not seen any lights or heard a siren. The dash camera recording software supports Stieve's version of events, indicating that the cruiser's lights and sirens were not activated until less than one second before the collision. Defendants' chalk up the discrepancy to an equipment malfunction, which they say also explains why the dash camera recording software indicates that the cruiser was traveling at 79 miles an hour at the time of the collision rather than at 60. Yet, defendants offered no expert testimony or other evidence aside from the deposition testimony of involved officers to support the existence of an equipment malfunction. Additionally, a witness to the collision stated on the recording that he saw the cruiser's lights turn off as it traveled down Outer Drive and flip back on just before the collision. The question becomes one of credibility, properly left to the jury. *Taylor v Mobley*, 279 Mich App 309, 314 n 5; 760 NW2d 234 (2008) ("The question of credibility is generally for the fact-finder to decide.").

There also remains a dispute for the jury regarding the reasonableness of Bowen's decision not to activate the cruiser's emergency siren. Bowen and Kostiuk were aware that another vehicle was nearer to the scene and would begin investigating before these officers could arrive. A jury might deem it unreasonable to avoid use of the sirens at that point as the element of surprise was no longer necessary.

Whether Bowen was reasonably responding to the call from dispatch, whether his lights and sirens were activated, and at what speed he was operating the cruiser are material facts. Resolution of each is necessary to determine whether Bowen violated the MVC, which would lead to a presumption of negligence. Answers to these questions will also resolve whether Bowen acted with "that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances." *Fiser*, 417 Mich at 470 (quotation marks and citation omitted). For example, should a jury find that Bowen unreasonably determined that

the nature of the emergency required silence and high speed, his speed and failure to activate the cruiser's lights and sirens would have clearly violated both MCL 257.603(3) and MCL 257.632.[2] This violation would then support a rebuttable presumption of negligence. When viewed in the light most favorable to Stieve, the evidence is sufficient to support a prima facie case of negligence, precluding summary disposition on governmental immunity grounds.[3]

Defendants further urge that summary disposition was warranted because Stieve could not establish that Bowen was the proximate cause of his injuries. "Proximate cause is usually a factual issue to be decided by the trier of fact, but if the facts bearing on proximate cause are not disputed and if reasonable minds could not differ, then the issue is one of law for the court. *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002). Defendants specifically contend that Stieve's act of driving across Outer Drive was the proximate cause of the accident, eliminating any liability on Bowen's part. However, in establishing ordinary negligence, there can be more than one proximate cause. *O'Neal v St John Hosp*, 487 Mich 485, 496-497; 791 NW2d 853 (2010). Even if Stieve's acts constituted a proximate cause of his injuries, Bowen's driving could be another. Questions of fact preclude summary disposition on the issue of proximate causation.

## B. GROSS NEGLIGENCE OF DEFENDANT BOWEN

The same factual disputes preclude summary disposition of Stieve's gross negligence claim against Bowen. Evidence of ordinary negligence does not automatically create a material question of fact concerning gross negligence. *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999). To establish gross negligence the evidence must demonstrate that "the contested conduct was substantially more than negligent." *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006). The violation of a statutorily imposed duty is not necessarily sufficient either. *Poppen v Tovey*, 256 Mich App 351, 358; 664 NW2d 269 (2003). "Gross negligence" is defined within the GTLA as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a);

---

[2] *Robinson*, 462 Mich at 457, is inapposite in this regard. In *Robinson*, the Supreme Court held "that the *decision to pursue* a fleeing motorist . . . is not encompassed within a narrow construction of the phrase 'operation of a motor vehicle.' " *Id*. (emphasis added). No one questions the officers' decision to respond to the emergency call in this case. Rather, Stieve questioned whether Officer Bowen complied with his statutorily imposed duties of care when acting on that decision.

[3] We reach this conclusion without deciding whether the dash camera footage was tampered with or accidentally altered. Stieve requested an adverse presumption as a sanction, claiming that there was evidence to show that the dash camera video recording had been tampered with and, in light of the inconsistency between Bowen's testimony and the dash camera software's "trigger" indicators, that Bowen had perjured himself at his deposition. The trial court denied the request because the issue had not been properly raised in the parties' briefs and was, at the time, unsupported by the evidence. Stieve may raise the issue again on remand should new evidence come to light.

*Costa*, 475 Mich at 411. It "has [also] been characterized as a willful disregard of safety measures and a singular disregard for substantial risks." *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010); see also *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). "Generally, once a standard of conduct is established, the reasonableness of an actor's conduct under the standard is a question for the factfinder, not the court." *Tallman v Markstrom,* 180 Mich App 141, 144; 446 NW2d 618 (1989), cited approvingly in *Jackson v Saginaw Co*, 458 Mich 141, 146; 580 NW2d 870 (1998). The evidence, viewed in the light most favorable to Stieve, creates a genuine issue of material fact whether Bowen was grossly negligent. Stieve's description of events is supported by software "triggers" connected with the dash cam footage. Those triggers suggest that Bowen was travelling 79 mph in a 35-mph residential zone without activating the overhead signal lights. Bowen's high rate of speed and his decision to avoid the use of any warning signals in a residential area could support an inference that he willfully disregarded safety measures and disregarded a substantial risk, particularly if the jury does not accept the dire nature of the emergency call. The jury may determine that this conduct crossed the line between ordinary and gross negligence.

Defendants again argue that Stieve's own negligence destroys his gross negligence claim. The proximate cause analysis is more stringent in the gross negligence context. Our Supreme Court has held that the GTLA as applied to government employees "contemplates one cause," "the immediate efficient, direct cause preceding the injury." *Robinson*, 462 Mich at 462-463 n 19. In other words, "[t]o be held liable under the GTLA, a defendant's gross negligence must be *the* most immediate cause of a plaintiff's injuries—it is not enough that the defendant's action simply be 'a' proximate cause." *Tarlea*, 263 Mich App at 92. Defendants are of course correct that had Stieve's vehicle not been in the intersection, the collision would not have occurred. But Stieve's mere presence cannot, in itself, constitute a contributing factor. Given the facts that remain in dispute, a finder of fact could reasonably conclude that Bowen's failure to take adequate precautions to ensure the safety of innocent bystanders was the "most immediate cause" of Stieve's injuries. In this case, proximate cause is an issue for a jury.

## C. NEGLIGENCE OF PLAINTIFF STIEVE/ COMPARATIVE FAULT

In a separate causation argument, defendants assert that the evidence establishes that Stieve was more than 50% at fault for the collision, barring recovery. Stieve was more than 50% at fault, defendants contend, because he failed to come to a complete stop at the stop sign at the intersection of Elmdale and Outer Drive. Defendants' arguments are legally unsound and the evidence is not nearly as cut-and-dried as defendants suggest.

MCL 257.671(3) and MCL 257.649(6) require drivers to bring their vehicles to a complete stop at traffic signals such as stop signs. MCL.649(6) further demands:

> After having stopped, the driver shall yield the right of way to a vehicle which has entered the intersection from another highway or which is approaching so closely on the highway as to constitute an immediate hazard during the time when the driver would be moving across or within the intersection.

Under these statutes, Stieve was bound to come to a complete stop on Elmdale and wait to cross the intersection with Outer Drive until safe to do so.

There remains a question of fact whether Stieve violated his statutory duty. See *Alfieri v Bertorelli*, 295 Mich App 189, 198; 813 NW2d 772 (2012) (quotation marks and citations omitted) ("[C]omparative negligence should be applied in all common-law tort actions sounding in negligence where the defendant's misconduct falls short of being intentional . . . and the question is whether, in viewing the evidence most favorably to the defendant, there is sufficient evidence for the jury to find negligence on the part of the injured plaintiff."). Defendants proclaim that the dash cam "video definitively shows that [Stieve] did not stop at the stop sign." This simply is not true. Houses and vehicles parked along Outer Drive block from view Stieve's vehicle as it approached the stop sign. Stieve can be seen slowly rolling from the stop sign to the edge of the intersection. However, there is no way to determine whether Stieve came to a complete stop and then inched forward for a clearer view of intersecting traffic or whether he rolled slowly past the sign. Defendants also presented still frames from the video, which they claim render "it . . . even more evident that [Stieve] failed to stop." To the contrary, absent the blur of motion seen in photographs of moving objects, there is no reason to believe from the static photos that Stieve's vehicle did not stop.

Even if Stieve violated the statutes, leading to a presumption of negligence on his part, the jury must consider his proportion of fault. *Zaremba Equipment Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 33; 761 NW2d 151 (2008) (noting that the question of comparative negligence is typically left to the fact-finder, as reasonable minds could differ on a plaintiff's level of fault). If the jury views the conflicting evidence and finds that Bowen was speeding, failed to activate his lights (as well as his siren), and had no reason to violate traffic laws in this manner, the jury may determine that Stieve reasonably believed he could safely cross Outer Drive and lay the majority of blame on Bowen for causing the accident. Contrary to defendants' urging, it is not clear as a matter of law that Stieve bore the majority of liability.

Defendants' legal contention that Stieve would be precluded from recovering damages if found more than 50% at fault is also incorrect. Prior to 1979, the doctrine of contributory negligence precluded a party from seeking relief if his or her own negligence contributed to the injury. In *Placek v Sterling Hgts*, 405 Mich 638, 654, 662; 275 NW2d 511 (1979), the Supreme Court repudiated contributory negligence and adopted a system of "pure" comparative negligence. In a pure comparative negligence system, each party is liable to the extent of his or her fault but is not denied recovery on this ground. *Id*. at 660-661. The Legislature has since enacted MCL 600.2957 and MCL 600.6304, adopting a pure form of comparative negligence in tort cases. See *Barnett v Hidalgo*, 478 Mich 151, 167-169; 732 NW2d 472 (2007). And " '[u]nder comparative negligence, where both the plaintiff and the defendant are culpable of negligence with regard to the plaintiff's injury, this reduces the amount of damages the plaintiff may recover but does not preclude recovery altogether[.]' " *Jimkoski v Shupe*, 282 Mich App 1, 7; 763 NW2d 1 (2008), quoting *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 523-524; 629 NW2d 384 (2001).

The Legislature has modified the application of comparative negligence in certain types of cases. One such exception is found in the no-fault act, MCL 500.3101 *et seq*. The no-fault act applies to regulate the scope of recoverable damages in a negligence action involving a motor vehicle, including an action involving a government agency asserting the defense of immunity. *Hannay v Dept of Transp*, 497 Mich 45, 51; 860 NW2d 67 (2014). MCL 500.3135 of the no-fault act provides:

(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

(2) For a cause of action for damages pursuant to subsection (1) filed on or after July 26, 1996, all of the following apply:

* * *

(b) Damages shall be assessed on the basis of comparative fault, except that *damages shall not be assessed in favor of a party who is more than 50% at fault*. [Emphasis added.]

It is important to remember that the damages available under the no-fault act "include both economic damages, such as damages incurred due to the loss of the ability to work and earn money, as well as noneconomic damages, such as pain and suffering and mental and emotional distress damages." *Hannay*, 497 Mich at 67. By the statute's plain language, MCL 500.3135(2)(b)'s limitation of comparative negligence principles applies only to *noneconomic* damages. A later subsection, MCL 500.3135(3)(c), limits economic damages to "allowable expenses, work loss, and survivor's loss as defined in [MCL 500.3107 to MCL 500.3110] in excess of the daily, monthly, and 3-year limitations contained in those sections." But the Legislature did not make § (2)(b) applicable to § (3)(c). Accordingly, even if a jury ultimately concludes that Stieve was more than 50% at fault for his injuries, he would not be completely barred from recovery of all types of damages he requested.[4]

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood

---

[4] Specifically, Stieve claimed damages for "severe and permanent injuries including, but not limited to, [bodily injury], anxiety, isolation, fear, depression, emotional distress, loss of the enjoyments and pleasures of life, economic loss, lost wages, loss [sic] earning capacity and other non-economic and economic injuries." His wife's damages included lost "services, economic support and companionship of her husband."